UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD SCOTT ELLERSICK,

                              Plaintiff,

v.

                                           Case # 17-CV-109-FPG

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                              Defendant.

                                           DECISION AND ORDER

## INTRODUCTION

Ronald Scott Ellersick ("Ellersick" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On June 18, 2013, Ellersick applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 178-82. He alleged disability since September 27, 2012 due to cardiomyopathy, chest

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2]     References to "Tr." are to the administrative record in this matter.

pain, difficulty breathing, high blood pressure, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, panic attacks, depression, and anxiety. Tr. 191. On June 16, 2015, Ellersick and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge John P. Costello ("the ALJ"). Tr. 28-82. On August 20, 2015, the ALJ issued a decision finding that Ellersick was not disabled within the meaning of the Act. Tr. 11-23. On December 12, 2016, the Appeals Council denied Ellersick's request for review. Tr. 1-3. Thereafter, Ellersick commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.      The ALJ's Decision**

The ALJ's decision analyzed Ellersick's claim for benefits under the process described above. At step one, the ALJ found that Ellersick had not engaged in substantial gainful activity since the application date. Tr. 23. At step two, the ALJ found that Ellersick has the following severe impairments: anxiety, depressive, and bipolar disorders, ADHD, history of oppositional defiance disorder and antisocial personality disorder, and obesity. Tr. 13-15. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 15-17.

Next, the ALJ determined that Ellersick retains the RFC to perform the full range of medium work[3] with nonexertional limitations. Tr. 17-22. Specifically, the ALJ found that Ellersick can perform simple repetitive tasks in a low stress work environment, cannot interact with the public, and can only occasionally interact with coworkers. Tr. 17.

At step four, the ALJ indicated that Ellersick had no past relevant work. Tr. 22. At step five, the ALJ relied on the VE's testimony and found that Ellersick could adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE testified that Ellersick could work as a commercial

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

4

cleaner, kitchen helper, and cook helper. Tr. 23. Accordingly, the ALJ concluded that Ellersick was not "disabled" under the Act. *Id.*

## II.     Analysis

Ellersick argues that remand is required because the RFC assessment is not supported by substantial evidence.[4] ECF No. 9-1 at 16-27; ECF No. 11 at 1-6. Specifically, Ellersick asserts that the ALJ based the RFC assessment on his lay opinion and failed to develop the record. *Id.* The Court agrees.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted). Depending on the circumstances, like when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Id.*

For the reasons that follow, the Court finds that the ALJ relied on his lay opinion instead of obtaining current medical assessments when he determined Ellersick's mental and physical RFC.

---

[4] Ellersick advances another argument that he believes warrants reversal of the Commissioner's decision. ECF No. 9-1 at 27-30; ECF No. 11 at 6-7. However, the Court will not address that argument because it disposes of this matter based on the improper RFC assessment.

5

### A. Mental RFC Assessment

The ALJ found that Ellersick can perform simple repetitive tasks in a low stress work environment, cannot interact with the public, and can only occasionally interact with coworkers. Tr. 17. Although the record contained mental health treatment notes from Ellersick's treating psychiatrists David Kaufman, M.D. and Muhammad Dawood, M.D., the only medical opinions as to his mental functioning were from consultative psychologists Kavitha Finnity, Ph.D. and Yu-Ying Lin, Ph.D.

Dr. Finnity opined that Ellersick can follow and understand simple directions, perform simple tasks independently and complex tasks with supervision, learn new tasks, and maintain a regular schedule. Tr. 363. Dr. Finnity also opined, however, that Ellersick has difficulty with attention and concentration, relating with others, and dealing with stress due to psychiatric symptoms. *Id.*

Dr. Lin opined that Ellersick can follow and understand simple directions and instructions, perform simple tasks independently and complex tasks with supervision, and learn new tasks. Tr. 298-99. He also opined that Ellersick is mildly limited in maintaining attention and concentration; mild to moderately limited in making appropriate decisions; moderately limited in relating adequately with others; moderately to markedly limited in maintaining a regular schedule; and markedly limited in appropriately dealing with stress. *Id.*

The ALJ's decision summarized the examination notes and opinions of each consultative psychologist. Tr. 19-20. He afforded both opinions only "some weight" because although "they are consistent with the treatment history, the clinical findings, and the opinions of treating

psychiatrists[5] . . . both mental status examinations took place in 2013, nearly two years ago." Tr. 20. The ALJ reasoned that Ellersick "has made great strides in his social, occupational, and personal life" since that time. *Id.* Ellersick argues that the ALJ should have developed the record with current medical opinions instead of simply discounting Dr. Finnity and Dr. Lin's opinions because they were outdated. The Court agrees.

The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his application unless it is necessary to develop an earlier period. 20 C.F.R. § 416.912(b). The ALJ must "make every reasonable effort" to help the claimant get reports from his medical sources. *Id.* Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

The ALJ found that the record suggested improvement in Ellersick's mental health condition since the 2013 consultative opinions, however, he still should have obtained a current medical opinion as to Ellersick's mental ability to perform work-related functions on a regular and continuing basis.[6] The ALJ found that Ellersick suffered from multiple severe mental

---

[5] Although the record contains treatment notes from treating psychiatrists Kaufman and Dawood, neither of them opined as to Ellersick's mental ability to perform work-related function despite the ALJ's assertion that they rendered "opinions" consistent with those of the consultative examiners. Tr. 352-59, 373-92, 411-31.

[6] *See* S.S.R. 96-8p, Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); *see also* 20 C.F.R. § 416.945(c) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his mental capacity).

impairments—anxiety, depressive, and bipolar disorders, ADHD, and history of oppositional defiance disorder and antisocial personality disorder—and thus this is not a situation where the ALJ can "render a common sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 2015 WL 1003933, at *21.

B.   **Physical RFC Assessment**

As to Ellersick's physical capacity, the ALJ found that he could perform the full range of medium work. Tr. 17. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). It also requires walking and standing for a total of six hours in an eight-hour workday with intermittent sitting. *See* S.S.R. 83-10, Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). Medium work requires use of the arms and hands to grasp, hold, and turn objects. *Id.* The considerable lifting requirements of medium work often results in frequent bending and stooping and requires flexibility of the knees and torso. *Id.*

Consultative examiners Karl Eurenius, M.D. and Harbinder Toor, M.D. provided the physical medical opinions in this case. Tr. 301-04, 364-67. Dr. Eurenius opined that Ellersick has moderate limitations in standing, walking, sitting, bending, and lifting and that he has a moderate to severe limitation in squatting. Tr. 304. He noted that pain interferes with Ellersick's physical routine. *Id.* Dr. Toor opined that Ellersick is moderately limited in walking, climbing, prolonged standing, bending, and lifting due to bilateral hip pain. Tr. 367.

The ALJ's decision summarized the examination notes and opinions of each consultative examiner. Tr. 21. The ALJ afforded both opinions only "some weight" because although "they are for the most part supported by the contemporaneous treatment records and clinical findings,"

8

the opinions are "not current" because they are from 2013. Tr. 22. The ALJ noted that "since 2013, [Ellersick] has had significant changes in his life, including finding and maintaining employment,[7] obtaining a driver's license, purchasing a car, maintaining his personal finances, and engaging in social activities." *Id.* Although both consultative examiners found Ellersick to have limitations in standing, walking, sitting, bending, and lifting, the ALJ determined that he could perform the full range of medium work, which is quite physically demanding. *See* 20 C.F.R. § 416.967(c); *see also* S.S.R. 83-10, 1983 WL 31251, at *6.

Again, the Court finds that the ALJ should have developed the record by obtaining a current medical opinion as to Ellersick's physical ability to perform work-related functions on a regular and continuing basis.[8] Although the ALJ cited record evidence that may indicate Ellersick's physical condition improved since 2013, a medical opinion is still required to assess his ability to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *See* 20 C.F.R. § 416.945.

Accordingly, for the reasons stated, the Court finds that remand is required to obtain current medical opinions as to Ellersick's mental and physical ability to perform work-related functions. Where, as here, "there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Glast v. Astrue*, No. 11-CV-5814 SLT, 2013 WL 5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (citation omitted). Because Ellersick filed his

---

[7] The Court notes that this work was part-time only. Tr. 17, 47-48; *see* 20 C.F.R. § 416.945(b)-(c); S.S.R. 96-8p, 1996 WL 374184, at *1 ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a *regular and continuing basis*. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") (emphasis added). Ellersick also indicated that his part-time work schedule varies and that he sometimes leaves work early because he cannot continue walking. Tr. 48, 51.

[8] *See* S.S.R. 96-8p, 1996 WL 374184, at *5 ("Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."); *see also* 20 C.F.R. § 416.945(b) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his physical capacity).

application nearly four and a half years ago, the Court directs the Commissioner to expedite the remand and review of this case.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 19, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court